U. S. Peg Wood, Shank and Leather Board Company

*vs.*

Bangor and Aroostook Railroad Company.

Piscataquis.    Opinion December 3, 1908.

*Trespass.  Railroad Location.  Record Proof Lost.  Secondary Evidence.  Presumptions.  Oral Agreement.  Estoppel.  Nonpayment of Damages.  Waiver. Statute, 1876, chapter 120, sections 6, 8.*

1.  When the record proof of a railroad location, under the statute, has been lost or destroyed, secondary evidence of compliance with the statutory requirements may be introduced.

2.  Where, after the lapse of more than twenty-five years during which a railroad had been maintained and operated over the premises of a land owner without objection, *held* that every presumption should be given in favor of the regularity of the proceedings whereby the railroad was located.

3.  Where there was an oral agreement between a land owner and a railroad company under which the railroad was to cross the premises of the land owner, *held* that such owner was estopped from setting up, as against the validity of the location, the failure of the railroad company to file a plan in the registry of deeds.

4.  Where there was an oral agreement between a land owner and a railroad company under which the railroad was to cross the premises of the land owner, *held* that the nonpayment of compensation to the land owner could not defeat the validity of the location if the claim for damages was waived by the land owner at the time, and that the existence of such oral agreement together with the subsequent occupation of the land by the railroad company were convincing evidence of such waiver.

5.  Where there was an oral agreement between a land owner and a railroad company under which the railroad company was to cross the premises of the land owner, *held* that the railroad company was not entitled to a full four rod location across the premises but was to have as much land as was needed for a road bed and road purposes or " whatever was needed for a road to go across."

6.  In the case at bar, *Held:*  That the evidence coupled with the surveys and plans leads to the conclusion that the defendant in relaying its tracks in 1902, did not trespass beyond the limits of its right of way.

On report.    Judgment for defendant.

Action of trespass quare clausum alleging that "the defendant corporation on the first day of October A. D. 1902 and on divers other days and times between that day and the day of the purchase of this writ with force and arms, broke and entered the plaintiff's close, situate in Brownville, in the county of Piscataquis," and "then and there dug up the soil, made excavations, made fills, threw up embankments, built and constructed a railroad over and across said land," etc.    Plea, the general issue with brief statement alleging a legal taking of the locus as a part of the location of the Bangor and Katahdin Iron Works Railway in 1881.

Tried at the September term, 1906, Supreme Judicial Court, Piscataquis County, and at the conclusion of the testimony it was stipulated as follows: That "upon so much of the foregoing evidence as is competent and legally admissible, the parties agree that this case shall be reported to the Law Court for a decision. If judgment is rendered for the plaintiff it is agreed that the damages are to be assessed by the Law Court at one hundred dollars."

The case is stated in the opinion.

*Hudson & Hudson*, for plaintiff.

*F. H. Appleton, and Hugh R. Chaplin*, for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, BIRD, JJ.

CORNISH, J.    Trespass quare clausum.    The title of the plaintiff and the entry by the defendant are admitted.    The defendant justified by reason of an alleged legal taking of the locus as a part of the location of the Bangor and Katahdin Iron Works Railway in 1881.    The plaintiff admits that the defendant has succeeded to the rights of the Bangor & Katahdin Iron Works Ry., but denies that the locus is within any legal location.

Two questions arise:

First.    Has the defendant proved a legal location over the plaintiff's land?

Second. Are the tracks, as relaid by the defendant in 1902, within that location?

The case discloses that the Bangor and Katahdin Iron Works Railway was organized under the general laws of the State on August 2, 1881, for the purpose of building a standard gauge railroad from Milo through Brownville and other townships to the Katahdin Iron Works, all in the County of Piscataquis. A corporation to build a narrow gauge railroad over the same route had been formed earlier in the same year but proceedings under that charter were abandoned. The charter of August 2, 1881, was accepted by the corporation on August 13, 1881.

Chapter 120 of the Public Laws of 1876, the then existing general law under which this railroad corporation was formed, specified in detail the legal steps to be taken both before and after the construction of the road.

Section six of that act required the following proceedings before commencing construction,

1. A petition to the railroad commissioners for approval of location, accompanied with

a. A map of the proposed route on an appropriate scale.

b. A profile of the line on a vertical scale of ten to one compared with the horizontal scale.

c. A report and estimate prepared by a skilful engineer from actual survey.

2. Notice and hearing on such petition.

3. The approval of the proposed location by the railroad commissioners and the finding that public convenience required the construction of the road.

4. Filing with the clerk of court of county commissioners within two years from the time the articles of association were filed with the secretary of state, a plan of the location, defining its courses, distances and boundaries.

5. Filing with the board of railroad commissioners, a copy of said plan within the same time.

Section eight required the following proceedings within one year after any part of the road had been constructed and opened for operation.

1.   Filing in the office of Secretary of State a map and profile of the road and of the land taken or obtained for the use thereof, certified and signed by the president and engineer of the corporation.

2.   Filing a like map in the registry of deeds.

The record proof of many of these steps was not in the possession of the defendants. Unfortunately, as the evidence shows, the railroad commissioners of this State had no official home and kept no official records prior to 1889. A few scattered papers involving matters that arose between 1883 and 1889 were discovered and rescued, but the office is furnished with nothing relating to railroad proceedings prior to 1883. The original papers therefore which should be in the office of the railroad commissioners cannot be found.

Under these circumstances the defendant was properly allowed to introduce secondary evidence of the facts. The confident and trustworthy attorney, who had charge of the incorporation testified that all the legal requirements of section 6 of chapter 120 of the Laws of 1876, were in fact complied with; that upon a proper petition and after due notice, the location was approved by the railroad commissioners on August 19, 1881 and that a plan of the location of the road defining its courses, distances and boundaries and perfect in every respect was duly filed with the clerk of courts of county commissioners and a copy of the same with the railroad commissioners; that he subsequently borrowed the plan from the clerk's office and left directions for its return, but evidently the directions were not carried out. Whatever plan was filed with the railroad commissioners disappeared like all their other papers and documents.

This testimony is corroborated so far as the hearing is concerned by a newspaper containing a copy of the petition for approval of location and order of notice thereon, which recites that the corporation presents therewith a map of the proposed route and a profile of the line of the same, together with a report and estimate thereof, prepared by a skilful engineer from actual survey. The original profile bearing the approval and original signatures of the railroad

commissioners under date of August 19, 1881, was found among the papers of the defendant's predecessor in title and offered in evidence. Under the circumstances of this case and after the lapse of more than twenty-five years, during which the road has been maintained and operated over the land of the plaintiff and its predecessor in title without objection, every presumption should be given in favor of the regularity of the proceedings. *Cushing* v. *Webb*, 102 Maine, 157. This published notice, if its recitals are correct, and we take them to be so especially in view of the approved profile, meets six of the requirements of section six. The testimony of the attorney supplies the balance, and all are confirmed by the railroad commissioners' report of 1882 stating that a portion of the road had already been built and the remainder would be completed early the coming season.

The requirements of section eight of chap. 120, Public Laws of 1876, are fulfilled by the production of the original papers from the office of the secretary of state, namely, a map and a profile of the road and of the land taken or obtained for the use thereof, each certified and signed by the president and engineer of the corporation, the map being dated June 1882 and the profile being filed November 28, 1882.

A copy of the same could not be produced from the registry of deeds although a like map of the location under the abandoned narrow gauge corporation was produced and the plaintiff contends that no other was filed under the standard gauge location. Were this true we do not think it could affect the rights of the parties in this case. The object of filing the plan in the registry of deeds is to enable the land owner to secure that "just compensation" required by the Constitution, and if he secures satisfaction otherwise he certainly cannot complain. The plaintiff itself introduced evidence in this case to show an oral agreement between the president of the railroad company and the owner of the land in 1881 under which the road was to cross the premises in question. Such conduct on the part of the land owner estops him from subsequently setting up as against the validity of the taking, the failure to file the plan in the registry of deeds. *Rockland Water Co.* v. *Tillson*, 69 Maine,

255; *Moore* v. *Boston*, 8 Cush. 274; *Stubbs* v. *Railway Co.*, 101 Maine, 355.

The plaintiff further attacks the validity of the location because no compensation was paid to the land owner. But this also may be waived by the land owner, *Perkins* v. *Maine Cen. R. R. Co.*, 72 Maine, 95, and the agreement before referred together with the subsequent occupation by the defendant for so many years without objection are convincing evidence of such a waiver.

It is therefore the opinion of the court that the defendant has introduced ample evidence to prove a legal location over the plaintiff's land.

We come now to the second proposition, are the tracks as relaid in 1902 within the legal location.

The maps of the location filed with the clerk of the county commissioners and with the railroad commissioners being lost and only the center line being given on the profile and map filed with the secretary of state, it is impossible to ascertain from record evidence the exact width of such location across the plaintiff's premises. The statute permitted a location not exceeding four rods in width for a standard gauge road. Competent engineers who testified at the trial, made a survey of the line for a long distance both north and south of the mill property and found from existing monuments that the width was four rods. In the absence of other evidence it might be presumed that the width at the mill property was the same. Such a presumption, however, is in a measure rebutted by the fact that the side lines of a location of that width would have passed through buildings then and still standing.

Moreover the plaintiff introduced evidence of an arrangement made between the president of the road and the then owner of the land, by which, according to the owner's testimony, the railroad company was to have what was needed for a road bed and for road purposes or as he restated it, "whatever was needed for a road to go across," and the center line was then staked out by them. Subsequently upon finding that the center line had been moved in his absence nearer to his buildings, the land owner sent for the president and the stakes were replaced in their original position.

Such an agreement, though oral, in the absence of any valid record location to control it, confined the right of way to. the agreed width namely, "whatever was needed for a road to go across." This reduces our question to another form, how much was needed for a "road to go across" and has the defendant trespassed beyond that limit?

It appears that the road was built in 1881 with a single track through these premises.  In 1894 a branch track was constructed between the main track and the plaintiff's mill, extending partly, and later on, wholly across the lot, for which the defendant did the grading and furnished the iron.  In 1902 the defendant when it came into possession of the property, took up the branch track, moved the old Katahdin Iron Works track toward the west and laid its own main line within what it claims was the original location of the Bangor and Katahdin Iron Works Railway.

It is not seriously controverted that proper railroad construction requires on level ground for a single track a width of at least two rods in addition to a suitable width for ditches to take care of the drainage..  In case of a fill this width is increased, every additional foot in depth requiring three feet additional in width.  The fill across these premises was of varying depths, being seven feet at the deepest point, which would require a width of thirty-seven feet. By ascertaining from the plans and profiles the center line of the original location upon the face of the earth for a long distance both north and south of the plaintiff's premises, it can be reproduced across the premises themselves, and then by applying the admitted rule of proper railroad construction, the actual width of the original right of way agreed upon by the parties can be ascertained and the actual location reproduced.  The actual location of the present tracks as relaid in 1902 can then be compared with the original location and the question of trespass can be readily determined. The results of these steps are shown in the plans introduced by the defendant, and in a measure by that introduced by the plaintiff. It is unnecessary to enter into a detailed statement of the facts and figures, as contained in the reported evidence which we have critically examined.  It is sufficient to say that in the opinion of the

court the defendant has maintained its claim by a preponderance of the evidence, and the answer to the second question must therefore be that the tracks as relaid in 1902 were within the legal location.

*Judgment for defendant.*